UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HSIN LIN,

        Plaintiff,

    v.

SOLTA MEDICAL, INC., et al.,

        Defendants.

Case No. 21-cv-05062-PJH

**ORDER RE MOTION TO DISMISS**

Re: Dkt. Nos. 41, 42, 51

Defendants' motion to dismiss came on for hearing before this court on May 5, 2022. Plaintiff appeared through her counsel, Carter Zinn and Jeremy Pollack. Defendants appeared through their counsel, David Norden and Ryan Lewis. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion in part, without prejudice for the following reasons.

## BACKGROUND

This is a products liability action filed by a California resident, Hsin Lin ("plaintiff"), against two out-of-state corporations, Solta Medical, Inc. ("Solta") and Bausch Health Americas, Inc. ("BHA") (collectively "defendants"). Dkt. 36, ¶¶ 1–3. Plaintiff alleges that she suffered injuries as a result of a skin treatment she received in Taiwan that utilized the Thermage CPT device manufactured by defendants. Id. ¶ 30. Specifically, plaintiff alleges she learned about the Thermage CPT procedure from defendants' "advertisements online." Id. ¶ 23. Plaintiff also alleges she learned from Solta's website that the Thermage CPT procedure was available in Taiwan. Id. ¶ 24. According to plaintiff, she decided to have the procedure done in Taiwan for "her own convenience."

Id. Plaintiff alleges that in January 2019, her friend put her in touch with a consultant at U Beaute Clinic in Taipei. Id. ¶ 25. On January 23, 2019, plaintiff received her treatment and suffered severe second-degree burns as a result. Id. ¶¶ 27–30.

On January 21, 2021, plaintiff filed a four-page form complaint in the Alameda County Superior Court. Dkt. 1-1. On June 30, 2021, defendants removed the case to federal court pursuant to 28 U.S.C. § 1441(a). Dkt. 1. On July 7, 2021, defendants moved to dismiss the case for lack of personal jurisdiction and failure to state a claim. Dkt. 8. On December 6, 2021, the court denied defendants' motion to dismiss in part and granted plaintiff's request for jurisdictional discovery. Dkt. 35. The court found that it lacked general jurisdiction over defendants due to insufficient contacts with the forum state, but it deferred ruling on the existence of specific jurisdiction until jurisdictional discovery was conducted. Id. at 7–11. The court also found that plaintiff's form complaint lacked the specificity to state a claim and granted leave to amend. Id. at 12.

On December 20, 2021, plaintiff filed her first amended complaint ("FAC"). Dkt. 36. Plaintiff alleges that the Thermage CPT was designed, engineered, and manufactured in California. Id. ¶ 13. Plaintiff also alleges the Thermage CPT device is accompanied by a user manual that contains defective warnings regarding the potential for serious burns. Id. ¶¶ 16–19. Plaintiff asserts three products liability causes of action: (1) defective design, (2) manufacturing defect, and (3) failure to warn. Id. at 8–15. Plaintiff also asserts causes of action for (4) negligence, (5) breach of express warranty, and (6) breach of implied warranty. Id. at 16–20. In effect, all claims relate to the allegedly defective Thermage CPT device. In her brief in opposition to the motion to dismiss, filed after jurisdictional discovery, plaintiff alleged that the Thermage CPT user manual was written in California in 2010. Dkt. 50 at 9.

On February 2, 2022, defendants moved to dismiss plaintiff's FAC for lack of personal jurisdiction. Dkt. 41.**DISCUSSION**

**A.   Legal Standard**

Under the Federal Rule of Civil Procedure 12(b)(2), a defendant may move to

dismiss for lack of personal jurisdiction. The party seeking to invoke a federal court's jurisdiction bears the burden of demonstrating jurisdiction. See Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). Where the defendant's motion is based on a written record and no evidentiary hearing is held, the "plaintiff need only make a prima facie showing of jurisdictional facts." Id. (internal quotation marks omitted). That is, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (internal quotation marks omitted).

A prima facie showing is not a "toothless" standard. In re Boon Glob. Ltd., 923 F.3d 643, 650 (9th Cir. 2019). The "party asserting jurisdiction cannot simply rest on the bare allegations of its complaint; however, uncontroverted allegations in the complaint must be taken as true." Id. (internal quotation marks omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id. (internal quotation marks omitted). But the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks omitted).

Federal courts "ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see Fed. R. Civ. P. 4(k)(1)(a). California's long arm statute permits exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution, therefore, the court's inquiry "centers on whether exercising jurisdiction comports with due process." Picot, 780 F.3d at 1211; see Cal. Code Civ. P. § 410.10.

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014). Due process requires that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Those

"contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there." Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A., 972 F.3d 1101, 1106 (9th Cir. 2020). "Alternatively, a court may exercise jurisdiction over issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (internal quotation marks omitted). The Supreme Court has referred to these "different bases for personal jurisdiction as 'general' and 'specific' jurisdiction." Id. at 1106–07.

In order for a court to exercise specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017) (internal quotation marks and alterations omitted). The "primary focus of [a] personal jurisdiction inquiry is the defendant's relationship to the forum State." Id. at 1779.

The Ninth Circuit's three-part test for specific jurisdiction is as follows: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).

The "plaintiff bears the burden on the first two prongs, but once both are established, the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable." Ayla, LLC v. Alya Skin Pty. Ltd., 11 F.4th 972, 979 (9th Cir. 2021) (internal quotation marks omitted).

The first prong of specific jurisdiction is satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). The form of a court's "jurisdictional

4

1    inquiry depends on the nature of the claim at issue." Picot, 780 F.3d at 1212.  For
2    contract claims, a court generally applies "a purposeful availment analysis and ask[s]
3    whether a defendant has purposefully availed himself of the privilege of conducting
4    activities within the forum State, thus invoking the benefits and protections of its laws."
5    Id. (internal quotation marks and alterations omitted).  For a court to find purposeful
6    availment, a "defendant must have performed some type of affirmative conduct which
7    allows or promotes the transaction of business within the forum state." Boschetto v.
8    Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (internal quotation marks omitted).  For tort
9    claims, a court applies a "purposeful direction test and look[s] to evidence that the
10   defendant has directed his actions at the forum state, even if those actions took place
11   elsewhere." Picot, 780 F.3d at 1212 (internal quotation marks omitted).  "At bottom, both
12   purposeful availment and purposeful direction ask whether defendants have voluntarily
13   derived some benefit from their interstate activities such that they will not be haled into a
14   jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Arc Wood &
15   Timbers, LLC v. Riverwood Flooring & Paneling, Inc., No. 21-CV-04885-HSG, 2021 WL
16   5771136, at *3 (N.D. Cal. Dec. 6, 2021) (citing Burger King Corp. v. Rudzewicz, 471 U.S.
17   462, 474–75 (1985) (internal quotation marks omitted).

18   On the second prong, specific jurisdiction "demands that the suit arise out of or
19   relate to the defendant's contacts with the forum." Ford Motor Co. v. Montana Eighth
20   Jud. Dist. Ct., 141 S. Ct. 1017, 1026 (2021) (internal quotation marks omitted).  Specific
21   jurisdiction can be satisfied with a causal showing or "another activity or occurrence
22   involving the defendant that takes place in the State." Id. (internal quotation marks and
23   alterations omitted).

24   For the third prong, reasonableness is measured by "(1) the extent of the
25   defendants' purposeful injection into the forum state's affairs; (2) the burden on the
26   defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of
27   the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the
28   most efficient judicial resolution of the controversy; (6) the importance of the forum to the

plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079 (9th Cir. 2011) (internal quotation marks omitted).

**B.     Analysis**

The court is tasked with determining whether it may exercise specific personal jurisdiction over Solta and BHA.[1]  Under the first prong, the parties do not dispute that the court reviews defendants' activities in California under the purposeful availment test.  As such, a defendant must take "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State" in order for a court to exercise specific jurisdiction.  Ford Motor Co., 141 S. Ct. at 1024 (internal alterations omitted).  Put another way, a defendant must "deliberately reach[] out beyond its home." Id. at 1025 (internal quotation marks omitted).

Plaintiff has satisfied her burden on the first prong of specific jurisdiction, and defendants' attorneys waived their arguments on this prong at the court's May 5, 2022 hearing.  It is undisputed that Solta designed the Thermage CPT in Hayward, California. It is also undisputed that Solta manufactured the Thermage CPT exclusively in Hayward, California from the years 2009 to 2015.  And it is undisputed that Solta created the Thermage CPT user manual in Hayward, California in 2010.  In sum, Solta's activities in California are not simply the result of placing "a product into the stream of commerce." LNS Enterprises LLC v. Cont'l Motors, Inc., 22 F.4th 852, 860 (9th Cir. 2022) (internal quotation marks omitted).  Nor are Solta's contacts with the forum "random, isolated, or fortuitous." Id. at 859 (internal quotation marks omitted).  Indeed, Solta's activities in California are distinctly tied to the creation and manufacture of the Thermage CPT—the product at issue in this products liability suit.  See id. at 861 (noting purposeful availment can be found where a defendant "design[s] the product for the market in the forum State") (internal quotation marks omitted).  Thus, Solta has purposefully availed itself of the

---

[1] Plaintiff's allegations refer to "defendants" and not "Solta" specifically because she believes Solta is acting as BHA's agent.

6

privileges of conducting business in the forum state even if the extent of that business has diminished over the years.

To meet the second prong of specific jurisdiction, a plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum." Ford Motor Co., 141 S. Ct. at 1026 (internal quotation marks and citation omitted). Plaintiff alleges this prong is met for the following reasons: (1) the Thermage CPT device was designed in California; (2) the Thermage CPT user manual, which allegedly contains defective warnings, was written and published in California in 2010; (3) defendants advertised the Thermage CPT in California, which relates to plaintiff's breach of warranty claims; and (4) the Thermage CPT was exclusively manufactured in California from 2009 to 2015. Dkt. 50 at 16–17.

At this stage of the litigation, the court is satisfied that the second prong is met. This is a products liability lawsuit in which plaintiff alleges, and defendants do not dispute, that the Thermage CPT was developed and designed in California. Courts routinely consider the forum of design and development when deciding whether specific jurisdiction exists. For example, in rejecting specific jurisdiction, the Ninth Circuit noted the defendant "did not itself manufacture, design, or service the plaintiffs' aircraft in Arizona (or anywhere)." LNS Enterprises LLC, 22 F.4th at 864; see Bristol-Myers Squibb Co. 137 S. Ct. at 1778 (2017) (finding against specific jurisdiction where the defendant "did not develop [the product] in California, did not create a marketing strategy for [the product] in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California"). True, Solta's activities and contacts in California have significantly decreased since 2015 when Solta started to transition the manufacturing of the Thermage CPT from Hayward, California to Bothell, Washington. See Dkt. 50 at 8. And Solta's headquarters in California closed in 2018, and its remaining location in California serves predominantly as a small customer support center. Dkt. 41 at 16. However, the court is unaware of any authority holding that this decrease in Solta's current activities in California somehow precludes a finding that its activities at the time of the design and manufacture of the allegedly defective device should not be

considered. As to the third prong, the court is also persuaded that the exercise of personal jurisdiction would not be unreasonable. Accordingly, given the current record, the court finds that plaintiff has made a prima facie showing sufficient to support a finding of specific jurisdiction over defendant Solta.

However, there remain several material factual issues that could change the court's analysis. For instance, if the device actually used for plaintiff's procedure was not designed or manufactured in California, or if the manual actually used during plaintiff's procedure was not written and published in California, the court would likely not find that the claim arises out of Solta's forum-related activities. The court would likely give little weight to further evidence about Solta's call center in California since the claims and injuries are unrelated to the call center. Thus, the denial of the motion to dismiss for lack of personal jurisdiction is without prejudice to a further motion based on a more complete factual record. The court will entertain a motion to reconsider this order after the close of discovery if, but only if, based on evidence other than what is currently before the court.

With respect to defendant BHA, however, the court grants defendants' motion and finds there is no personal jurisdiction. Plaintiff argues that personal jurisdiction exists over BHA because Solta acted as BHA's agent. "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." Ranza v. Nike, Inc., 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and alterations omitted). The unity of interest and ownership prong "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." Id. (internal quotation marks omitted).

Plaintiff provides no evidence to support that Solta acted as BHA's agent, and, contrary to plaintiff's suggestion, the court may not simply take her allegations as true, particularly when defendants directly contradict them. Indeed, there is no evidence of a

8

"unity of interest and ownership" between BHA and Solta.  Plaintiff inaccurately asserts that Scott Hirsch—a division president of BHA—declares that BHA "directs and controls" Solta.  Dkt. 50 at 14.  In fact, Scott Hirsch declares that BHA is Solta's parent company and nothing more.  Dkt. 50-1 at 45.  Accordingly, plaintiff fails to show an agency relationship between BHA and Solta.

**OTHER REQUESTS**

### 1. Request for Judicial Notice

Defendants request that the court take notice of publicly available documents from the Food and Drug Administration ("FDA") website: (1) a Thermage CPT 510(k) Premarket Notification and (2) a January 8, 2019 FDA Clearance Letter.  Dkt. 42.  Defendants argue these documents are records of official action that are readily determined and cannot reasonably be questioned.  Plaintiff does not oppose.

A court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Matters of public record may be judicially noticed, but disputed facts contained in those records may not.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

The court takes judicial notice of the requested documents because they cannot be reasonably questioned.  Indeed, courts in this district routinely grant judicial notice of similar documents from the FDA.  See, e.g., Eidmann v. Walgreen Co., 522 F. Supp. 3d 634, 642 (N.D. Cal. 2021) ("Documents published on government-run websites are proper for judicial notice given their reliability"); Wilson v. Frito-Lay N. Am., Inc., 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017) ("Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website").

### 2. Motion to Seal

Plaintiff filed a motion to "consider whether another party's material should be sealed."  Dkt. 51.  Plaintiff refers to sealing exhibit 6, which shows the revenue for the

Thermage CPT and the Thermage NXT for the years 2009 to 2021 in California. Id. at 4. Defendants filed a statement in support of this sealing. Dkt. 53. Defendants argue that Solta's yearly revenue for the Thermage devices amounts to sensitive financial information constituting "business information that might harm a litigant's competitive standing." Id. at 2. Defendants also assert that the information constitutes protectable trade secrets. Id.

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006). "[A] strong presumption in favor of access is the starting point." Id. at 1178 (internal quotation marks omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." Id. at 1178–79 (internal quotation marks omitted). "In general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Id. at 1179 (internal quotation marks and alterations omitted). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Id.

The compelling reasons standard is not met here. Defendants fail to establish that disclosure of the Thermage revenue information would harm Solta's competitive standing. In the past, courts have sealed financial information where there was information on pricing terms and price-related contracts. See, e.g., In re Elec. Arts, Inc., 298 F. App'x 568, 569 (9th Cir. 2008) (sealing "the pricing terms, royalty rates, and guaranteed minimum payment terms"); DiscoverOrg Data, LLC v. Bitnine Glob., Inc., No.

10

19-CV-08098-LHK, 2020 WL 8669859, at *3 (N.D. Cal. Nov. 6, 2020) (finding "the competitive harm that would result from the disclosure of Plaintiff's pricing and contracts with third parties is a compelling reason that outweighs the general history of access and the public policies favoring disclosure").

But boilerplate statements of competitive harm are insufficient to withhold information from the public. See Hodges v. Apple Inc., No. 13CV01128WHOWHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013) (noting an "unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient") (internal quotation marks and alterations omitted).  Here, defendants rely exclusively on conclusory assertions to support their position.  Defendants assert that the Thermage revenue information "would give an unfair business advantage to [] Solta's competitors," but they provide no explanation as to what business advantage Solta's competitors would gain. Dkt. 53 at 2.  Likewise, defendants assert, without any support, that "Solta's confidential financial information [] constitutes trade secret information that should be protected from disclosure." Id. at 4.  But defendants do not explain why Solta's revenue information gives Solta "an opportunity to obtain an advantage over competitors who do not know or use it." In re Elec. Arts, Inc., 298 F. App'x at 569 (internal quotation marks omitted).  Accordingly, the motion to seal is DENIED.

## CONCLUSION

Solta's motion to dismiss is DENIED without prejudice.  BHA's motion to dismiss is GRANTED without leave to amend.  Defendants' request for judicial notice is granted.  Plaintiff's motion to seal is DENIED.

**IT IS SO ORDERED.**

Dated: June 21, 2022

                                            /s/ *Phyllis J. Hamilton*
                                  PHYLLIS J. HAMILTON
                                  United States District Judge